```
          IN THE UNITED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF OHIO
                     EASTERN DIVISION
```

Gary K. Gartin,            :

      Plaintiff,        :

  v.                         :         Case No. 2:12-cv-0281

Commissioner of Social     :         JUDGE MICHAEL H. WATSON
   Security,                         Magistrate Judge Kemp
                           :
      Defendant.


                   REPORT AND RECOMMENDATION

                    I.   Introduction

    Plaintiff, Gary K. Gartin, filed this action seeking review of a decision of the Commissioner of Social Security denying his applications for disability insurance benefits and supplemental security income.  Those application either were filed on, or had an effective filing date of, May 30, 2008 and alleged that plaintiff became disabled on August 24, 2007.

    After initial administrative denials of his applications, plaintiff was given a hearing before an Administrative Law Judge on July 5, 2010.  In a decision dated September 21, 2010, the ALJ denied benefits.  That became the Commissioner's final decision on February 3, 2012, when the Appeals Council denied review.

    After plaintiff filed this case, the Commissioner filed the administrative record on June 26, 2012.  Plaintiff filed his statement of specific errors on July 27, 2012.  The Commissioner filed a response on August 23, 2012.  No reply brief has been filed, and the case is now ready to decide.

    II.   Plaintiff's Testimony at the Administrative Hearing

    Plaintiff, who was 49 years old at the time of the administrative hearing and who has a twelfth grade education, testified as follows.  His testimony appears at pages 23-38 of

the administrative record.

Plaintiff last worked as a quality control supervisor for Walmart optical.  The job involved lifting approximately 50 pounds of trays and carrying them from one point to another within the laboratory.  He stopped performing that job due for a period of time due to its lifting requirements and the impact it had on his shoulders.  However, he was actually terminated from the job because he failed to disclose a prior criminal conviction on his job application, which happened after he had returned from a medical leave of absence.  Plaintiff had also worked in painting and remodeling, owning his own business.

As far as household activities are concerned, plaintiff can do some cooking but is no longer able to vacuum or make beds.  Others, such as his landlord, do outdoor chores.  Plaintiff does need to alternate between sitting and standing to help with the pain in his shoulders, which begins in the neck and radiates to his elbows, with numbness or tingling in his hands and fingers.  He can use a computer for ten minutes at most, and often has numbness in his hands which prevents him from picking things up or causes him to drop things.  He also naps during the day because he does not sleep through the night.

### III.  The Medical Records

The medical records in this case are found beginning on page 184 of the administrative record.  The pertinent records can be summarized as follows.

Plaintiff began receiving treatment for neck pain as early as 2004, when an x-ray showed mild to moderate plate spurring and disc space narrowing at C5 through C7.  In 2006 an x-ray showed some degenerative disc disease at T11 through L1 as well, and an MRI showed multilevel degenerative changes in the cervical spine.  At an examination in 2006, plaintiff reported neck stiffness and pain as well as tingling in his hands, and an examination showed

-2-

tenderness in the paravertebral muscles of the cervical and upper thoracic spine and a limited range of motion in the neck. Treatment included medication and physical therapy, with some improvement noted.  By March, 2008, plaintiff was requesting that disability forms be completed, noting that he had lost his job and had dropped things at work.  He also reported increasing weakness and numbness in his upper extremities, and an examination confirmed these symptoms on the left side.  (Tr. 184-97).  Several months after that examination, Dr. Blake, one of the physicians at Darby Creek Family Health, where plaintiff had been treated, completed a form indicating that plaintiff could stand or walk for three to four hours in a work day, was not limited in his ability to sit, and had marked limits on his ability to push, pull, bend and reach as well as a moderate limit on his handling ability.  He could only lift up to five pounds, and Dr. Blake considered him unemployable.  (Tr. 198).

A state agency physician, Dr. Klyop, later reviewed the records and concluded that plaintiff could do light work with occasional balancing, frequent climbing, and limited handling and fingering with the left upper extremity.  Concentrated exposure to hazards also had to be avoided.  Dr. Klyop did not think that the five pound lifting limitation or the limitation on standing and walking were supported by either the results of the reported neurological examinations or the MRI.  (Tr. 201-08).  Dr. Villanueva, another state agency reviewer, affirmed that assessment.  (Tr. 209).

A CT scan of the chest done on March 24, 2010 showed severe emphysema.  Some calcified nodules were also seen in the upper lung lobes bilaterally.  (Tr. 217).  The study was done based on plaintiff's report of shortness of breath.  (Tr. 223-25). Plaintiff underwent another MRI in 2010.  It showed no stenosis in the thoracic spine but various changes in the cervical spine,

including significant spinal stenosis which had progressed from the 2006 study.  (Tr. 227-28).

On July 10, 2010, Dr. Blake completed another form asking about plaintiff's physical capacity.  Dr. Blake noted diagnoses of spinal stenosis, COPD, parasthesia hypoesthesia, and a frozen shoulder.  He limited plaintiff to lifting five pounds occasionally and one to two pounds frequently, to standing, walking or sitting less than 30 minutes in a work day, and to alternate between sitting and standing every 30 minutes.  Dr. Blake also thought that plaintiff needed to lie down twice during a work day and that he was limited in other activities as well. He also could not reach, push, or pull, and could handle and finger only occasionally.  His COPD limited plaintiff from having concentrated exposure to heat and any exposure to fumes, odors or dust.  Dr. Blake said these restrictions had existed since February, 2006.  (Tr. 229-31).

### IV.  The Vocational Testimony

A vocational expert, Mr. Hartung, also testified at the administrative hearing.  His testimony begins at page 38 of the record.  He characterized plaintiff's past work in the optical laboratory as either light or sedentary, and it was all skilled. The house repairer job was medium and skilled.  To the extent that plaintiff also worked as a construction laborer, that job was heavy and semi-skilled.

Mr. Hartung was asked some questions about a hypothetical person who was limited to lifting twenty pounds occasionally and ten pounds frequently.  That person could sit, stand or walk for six hour each out of a work day, could do only frequent handling and fingering with the left hand, could occasionally climb ropes, ladders or scaffolds, and could not have concentrated exposure to moving machinery or unprotected heights.  Mr. Hartung testified that one of plaintiff's past jobs, precision inspector, could be

performed by someone with these limitations.  However, someone who had to take unscheduled breaks for up to two hours during the work day could not work at all, and the same would be true if that person could sit, stand and walk for less than an hour a day.

> V. The Administrative Law Judge's Decision

The Administrative Law Judge's decision appears at pages 8 through 15 of the administrative record.  The important findings in that decision are as follows.

The Administrative Law Judge found, first, that plaintiff met the insured requirements for disability benefits through December 31, 2012.  Next, plaintiff had not engaged in substantial gainful activity from his alleged onset date of August 24, 2007 through the date of the decision.  As far as plaintiff's impairments are concerned, the ALJ found that plaintiff had severe impairments including degenerative spinal stenosis and bone spurs, upper neck and mid-shoulder pain, tingling of the hands, and emphysema.  The ALJ also found that these impairments did not, at any time, meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).

Moving to the next step of the sequential evaluation process, the ALJ found that plaintiff had the residual functional capacity to perform the lifting requirements of light work, but that he had limited use of his left arm or hand for fingering and handling, and that he needed to avoid concentrated exposure to moving machinery and unprotected heights and could only occasionally climb ladders, ropes and scaffolds.  He also found that plaintiff could understand, remember and carry out simple tasks and instructions, could maintain concentration and attention for two-hour segments of an eight-hour work period, could respond appropriately to supervisors and co-workers in a

setting where contact with others was casual and infrequent, and that he could adapt to simple changes and avoid hazards in the workplace.  Based on the vocational expert's testimony, which, according to the administrative decision, was based on asking the vocational expert to assume "the residual functional capacity as assessed by the undersigned here," Tr. 14, the ALJ found that plaintiff could do his past work as a precision inspector.  Consequently, the ALJ concluded that plaintiff was not entitled to benefits.

VI.  Plaintiff's Statement of Specific Errors

In his statement of specific errors, plaintiff raises two issues.  He argues (1) that the ALJ improperly discounted the opinion of his treating physician, Dr. Blake; and (2) that the ALJ did not properly evaluate his credibility.  The Court generally reviews the administrative decision of a Social Security ALJ under this legal standard:

Standard of Review.  Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Company v. NLRB, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'"  Id.  LeMaster v. Weinberger, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based upon the record as a whole.  Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'"

Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human Services, 755 F.2d 495, 497 (6th Cir. 1985).  Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence.  Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

The primary issue here is the ALJ's treatment of Dr. Blake's opinion which, if accepted, would support a finding of disability.  In analyzing this opinion, the ALJ made the following findings:

> The undersigned finds glaring inconsistencies with Dr. Blake's findings and opinions.  According to the claimant, he last worked August 2007. Since Dr. Blake stated the claimant was so severely disabled, then the claimant must have been able to engage in substantial gainful activity with these impairments from February 2006 to August 2007.  This inconsistency reveals the claimant is not as disabled as Dr. Blake suggests.  Dr. Blake provided no explanation for believing the claimant is under such extreme impairments according to his medical opinion.  Consequently, the undersigned assigns no weight to Dr. Blake's medical opinion.

(Tr. 13).  The ALJ then discussed Dr. Klyop's opinion and found that it was consistent with the ALJ's own assessment, was persuasive, and was an opinion from a specialist who considered "the entire medical record ...." Id.  Therefore, the ALJ assigned that opinion significant weight.  Finally, the ALJ found that plaintiff sought medical treatment not to alleviate his symptoms but to generate evidence for his disability application.  (Tr. 14).

It has long been the law in social security disability cases that a treating physician's opinion is entitled to weight substantially greater than that of a nonexamining

-7-

medical advisor or a physician who saw plaintiff only once. 20 C.F.R. §404.1527(d); see also Lashley v. Secretary of H.H.S., 708 F.2d 1048, 1054 (6th Cir. 1983); Estes v. Harris, 512 F.Supp. 1106, 1113 (S.D. Ohio 1981).  However, in evaluating a treating physician's opinion, the Commissioner may consider the extent to which that physician's own objective findings support or contradict that opinion.  Moon v. Sullivan, 923 F.2d 1175 (6th Cir. 1990); Loy v. Secretary of HHS, 901 F.2d 1306 (6th Cir. 1990).  The Commissioner may also evaluate other objective medical evidence, including the results of tests or examinations performed by non-treating medical sources, and may consider the claimant's activities of daily living. Cutlip v. Secretary of HHS, 25 F.3d 284 (6th Cir. 1994).  No matter how the issue of the weight to be given to a treating physician's opinion is finally resolved, the ALJ is required to provide a reasoned explanation so that both the claimant and a reviewing Court can determine why the opinion was rejected (if it was) and whether the ALJ considered only appropriate factors in making that decision.  Wilson v. Comm'r of Social Security, 378 F.3d 541, 544 (6th Cir. 2004).

    Plaintiff suggests that the ALJ's decision is fatally flawed because, first, the ALJ failed to take into account the fact that plaintiff was on disability leave for a substantial period of time between February, 2006 and August, 2007; second, the ALJ seemed to give no weight to the fact that Dr. Blake had examined plaintiff, whereas Dr. Klyop had not; and, third, that the ALJ generally ignored the various factors he was required to consider under 20 C.F.R. §404.1527(d), including the length of the treating relationship (almost four years), the nature and extent of

the treatment rendered, and the support for his opinion from medical tests and physical examinations.  Plaintiff also points out that Dr. Klyop's opinion was rendered in 2008 and that he did not have the opportunity to review the 2010 MRI which provided part of the support for Dr. Blake's 2010 opinion.

In response, the Commissioner first argues that Dr. Blake was not really a treating source since the records suggest that, at most, he saw plaintiff on one occasion (although others in his practice group saw plaintiff as well).  Consequently, the Commissioner argues that the ALJ was not required to give Dr. Blake's opinion any particular weight or to comply with §404.1527(d) when explaining why he rejected it.

There are several problems with this particular argument.  First, the record itself is, as the Commissioner notes, somewhat ambiguous as to how often Dr. Blake himself saw plaintiff, but clear that the same practice group provided treatment to plaintiff on an ongoing basis since at least 2004.  Dr. Blake took over the case of plaintiff at least as early as March of 2010; various notes from other doctors indicate that he referred plaintiff to them for either respiratory testing or spinal studies, and those notes indicate that he is the treating and referring doctor. Plaintiff identified Dr. Blake as his treating doctor and said that he had been seeing him for a determination of what was occurring with his shoulder.  (Tr. 32).  Dr. Blake also signed a disability evaluation form in 2008 (Tr. 198) and stated that plaintiff had last been examined on June 27, 2008.

A physician may qualify as a treating source even if he or she has examined the plaintiff on only a few occasions so long as the plaintiff has seen "the source with a frequency

consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s)." 20 C.F.R. §404.1502; see also Fry v. Astrue, 2012 WL 5830246, *5 (S.D. Ohio Nov. 16, 2012), adopted and affirmed 2012 WL 6738661 (S.D. Ohio Dec. 31, 2012)(noting that a claimant may have an "ongoing treatment relationship" with a physician who has seen the claimant only a few times but in conjunction with visits to other sources in the same practice group, and also pointing out that the question of who qualifies as a treating source is "fact-specific..."). Coupled with these factors is the ALJ's own characterization of Dr. Blake as a treating source. See Tr. 13 (referring to "Byron Blake, M.D., treating physician"). The Court is not generally permitted, in a social security case, to make factual findings de novo, see Walters v. Comm'r of Social Security, 127 F.3d 525, 528 (6th Cir. 1997), and it is particularly reluctant to attribute certain lines of reasoning to the ALJ on a post hoc basis if the ALJ did not actually employ that reasoning process in reaching a decision. See, e.g., Potts v. Astrue, 2012 WL 5878859, *2 (N.D. Ohio November 21, 2012)("Any attempt by this Court to uphold an ALJ's decision because of the presence of existing evidence that the ALJ did not expressly rely upon would be a post hoc rationalization"). The ALJ in this case did not use the rationale advanced by the Commissioner in discounting Dr. Blake's opinion, and viewed him as a treating source. It is incumbent upon the Court to do the same.

    Assuming Dr. Blake to be a treating source, the Commissioner argues that the ALJ gave sufficient and valid reasons for assigning no weight to his opinion. These reasons include Dr. Klyop's criticism of Dr. Blake's earlier opinion, which limited plaintiff to something between light

-10-

and sedentary work, as not being supported by objective evidence; the inconsistency between Dr. Blake's later view that plaintiff's disability began in February, 2006, and the fact that plaintiff was still employed in a medium job on and after that date; and the fact that "Dr. Blake provided no explanation for believing that claimant is under such extreme impairments according to his medical opinion." (Tr. 13). The Commissioner's brief suggests other reasons as well, but, again, the Court must look to the actual reasons given by the ALJ in order to determine if there has been compliance with 20 C.F.R. §404.1527(d). See Wilson, supra.

Whatever the force of Dr. Klyop's critique, it was made in a report made in 2008, and without the benefit of the results of the 2010 tests. While it may justify the ALJ's decision to give less weight to Dr. Blake's 2008 opinion, it has no relevance to the opinion rendered in 2010. That leaves only the statement about the "glaring inconsistency" in Dr. Blake's reports and his failure to provide an explanation for the severe restrictions he imposed.

Both of these factors might justify discounting his opinion to some extent. Dr. Blake did appear to state that plaintiff could not perform even sedentary work at a time when he was actually doing much more, although Dr. Blake's 2008 opinion is much more optimistic as to plaintiff's actual work ability on that date. This is an inconsistency, but given that it arises solely from the completion of one line of a form, it is not so significant as to justify giving his opinion no weight at all.

As to the lack of explanation for his findings, the Commissioner is correct that this Court has accepted a somewhat similar rationale in other cases where less than controlling weight is given to the opinion of a treating source (although the Commissioner's citation to Deaton v.

-11-

Astrue, 2011 WL 4062993 (S.D. Ohio July 7, 2011), adopted and affirmed 2011 WL 4064028 (S.D. Ohio Sept. 13, 2011) actually deals with the ALJ's rejection of the opinion of a non-treating source). However, Dr. Blake, while he did not provide a specific rationale, clearly indicated that he had treated plaintiff for particular conditions, including spinal stenosis and COPD, and his records - including reports from various specialists to whom he had specifically referred plaintiff - contained objective evidence both of the existence of those conditions and their severity. Treating physicians are given some leeway in this regard; there is a substantial difference between an opinion which is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques," which is a regulatory standard found in §404.1527, and an opinion which is clearly founded on such evidence but which lacks a detailed explanation from the treating source as to how the evidence actually supports the conclusions reached by that source. See, e.g., Bull v. Comm'r of Social Security, 629 F.Supp. 2d 768, 780-81 (S.D. Ohio 2008), citing Cornett v. Califano, No. C-1-78-433 (S.D. Ohio Feb. 7, 1979).

    Here, the ALJ did not actually reject Dr. Blake's 2010 opinion because it was not supported by sufficient tests or studies; rather, the ALJ simply said it deserved no weight because, in addition to the inconsistency noted, Dr. Blake did not explain his conclusions. That is not ordinarily a reason to treat the opinion as if it had never been rendered, which is what the ALJ did when he accorded it no weight whatsoever, or a reason to disregard the test results showing that plaintiff's spinal condition was progressive and worsening over time. In fact, those test results (Ex. 7F, 8F, and 9F) were not mentioned at all in the ALJ's decision; the only reference to any of them comes in the

ALJ's discussion of plaintiff's credibility, where the ALJ points out inconsistencies between plaintiff's testimony and Dr. Chinn's notes.

Overall, the ALJ's rejection of Dr. Blake's opinion, and his decision to give it no weight at all, is not supported by substantial evidence and is procedurally deficient.  The administrative decision does not, as plaintiff notes, discuss many of the §404.1527 factors at all, or indicate how they factored into the ultimate decision.  As the Rogers court stated, see 486 F.3d at 242, citing Wilson, supra, at 544, "[w]hen the treating physician's opinion is not controlling, the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors."  It is impossible to tell if the ALJ did that here, and the factors he did cite do not justify giving no weight to Dr. Blake's opinion, particularly in light of medical evidence which post-dates the opinion which was given controlling weight - Dr. Klyop's - by almost two years, and which Dr. Klyop clearly had no opportunity to comment on or consider.  A remand is therefore in order.

There is one other unusual feature to this decision which also should be clarified.  The ALJ did not find any severe mental impairment.  He did not include any mental limitations in the hypothetical question posed to the vocational expert.  Yet he found mental limitations in his residual functional capacity finding.  There is no evidence that someone with these mental restrictions could perform plaintiff's past work.  A remand will provide the Commissioner with an opportunity to clear up this seeming

-13-

inconsistency.

This conclusion largely moots any issue concerning the way in which the ALJ made his credibility finding. The Court does note, however, that this finding is committed to the ALJ in the first instance, see, e.g. Felisky v. Bowen, 35 F.3d 1027 (6th Cir. 1994), and the ALJ did have evidence before him of conflicting and inconsistent statements made by the plaintiff which justified viewing the plaintiff's report of debilitating symptoms with some skepticism.

## VII.  Recommended Decision

Based on the above discussion, it is recommended that the plaintiff's statement of errors be sustained to the extent that this case be remanded to the Commissioner pursuant to 42 U.S.C. §405(g), sentence four.

## VIII.  Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a

-14-

waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

                                        /s/ Terence P. Kemp
                                        United States Magistrate Judge